# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| LUCAS BURNHAM, RONALD DOTSON, KYLE DYSON, CONNIE HORTON, RYAN MCRAE, MAURICE EADIE, and CHRISTINA SEAL,<br><br>Plaintiffs,<br><br>v.<br><br>TAYLOR FRESH FOODS, INC. d/b/a TAYLOR FARMS, TACO BELL CORP., and TACO BELL OF AMERICA, LLC,<br><br>Defendants. | Case No.:<br><br>Hon.: |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Lucas Burnham, Ronald Dotson, Kyle Dyson, Connie Horton, Ryan McRae, Maurice Eadie, and Christina Seal (collectively, "Plaintiffs") allege the following based on personal knowledge as to their own experiences and, as to all other matters, based on the investigation of counsel:

## I.      INTRODUCTION

1.      Individuals have a reasonable expectation that they should be able to eat commercially produced and publicly available food products without becoming violently ill due to the negligence, gross negligence and deceptive practices of the corporations producing and selling that food.

2.      However, Plaintiffs, along with thousands of others, contracted the Cyclospora parasite after consuming lettuce supplied and distributed by Defendant Taylor Fresh Foods, Inc. d/b/a Taylor Farms ("Taylor Farms") and sold at Taco Bell locations throughout the country, but especially in Michigan.

3.      The parasite Cyclospora causes a gastrointestinal illness ("Cyclosporiasis") in people who consume food or water contaminated with the parasite. Symptoms usually appear about 1-2 weeks after exposure. The most common symptoms include "watery diarrhea, which can be frequent, along with loss of appetite, weight loss, bloating, nausea, and fatigue. Less common symptoms include low-grade fever and vomiting. Without treatment, symptoms can . . . last

2

from a few days to a month or longer."[1] The illness can be "severe" and "complications can include malabsorption, cholecystitis, and reactive arthritis."[2]

4.      The Cyclospora outbreak in recent weeks is one of the largest in United States history, infecting *at least* 7,171 individuals in Michigan as of July 22, 2026, including thousands in this District.[3] Thousands more individuals have been infected nationwide.

5.      Approximately 9% of individuals who the CDC recognizes as having contracted Cyclosporiasis during the current outbreak have been hospitalized.[4] In Michigan, at least 102 victims have been hospitalized as of July 16, 2026.

6.      After weeks of uncertainty and government investigation, the CDC, FDA, and public health officials linked the Cyclospora outbreak to iceberg lettuce distributed by Taylor Farms to retail locations, including Taco Bell.[5] Taylor Farms

---

[1] *Domestically Acquired Cyclosporiasis Cases in Multiple U.S. States, 2026*, CDC, July 14, 2026, https://www.cdc.gov/han/php/notices/han00531.html (last visited July 22, 2026).

[2] *Id.*

[3] *Infectious Disease Outbreaks*, MICHIGAN DEPARTMENT OF HEALTH AND HUMAN SERVICES, https://www.michigan.gov/mdhhs/keep-mi-healthy/infectious-diseases/infectious-disease-outbreaks (last updated July 22, 2026).

[4] *See Domestically Acquired Cyclosporiasis*, n.1, *supra*.

[5] *Cyclospora Outbreak Linked to Iceberg Lettuce in 5 States*, CDC, July 18, 2026, https://www.cdc.gov/cyclosporiasis/outbreaks/07-26/index.html (last visited July 22, 2026).

recalled the lettuce and advised individuals not to consume any recalled lettuce, including "at any Taco Bell location or other restaurants."[6]

7.     The FDA, in a post on X on July 20, 2026, confirmed that the "overwhelming epidemiological data" from its "ongoing outbreak investigation" supported the Taylor Farms recall of the contaminated lettuce:[7]



_____

[6] *Id.*

[7] *U.S. FDA*, X, July 20, 2026, https://x.com/US_FDA/status/2079238466118865220?s=20 (last visited July 22, 2026).

8. As a direct and proximate result of the conduct of the Defendants as set forth herein, Plaintiffs contracted Cyclosporiasis, resulting in injuries as more fully described below; they have incurred damages, suffered emotional and physical harm, including pain, fright, shock, humiliation, mortification, and embarrassment and suffered ascertainable economic losses due to Defendants' negligence, gross negligence, and deceptive practices from the supply and sale of the Cyclospora-contaminated lettuce.

## II. PARTIES

### A. Plaintiffs

9. Plaintiff Lucas Burnham is a citizen and resident of the city of Monroe, Monroe County, Michigan. On or about June 15, 2026, he purchased and consumed food products containing Taylor Farms Lettuce from a Taco Bell in Monroe, Monroe County, Michigan. On or about June 21, 2026, Plaintiff Burnham started experiencing stomach cramping, fatigue, and explosive diarrhea. Plaintiff Burnham visited an urgent care center in Monroe, Monroe County, Michigan, where he gave a stool sample that was confirmed to be infected with Cyclospora. He was prescribed Bactrim for the Cyclospora infection. Plaintiff Burnham has suffered and continues to suffer the above described economic and non-economic damages due to Defendants' conduct.

5

10. Plaintiff Ronald Dotson is a citizen and resident of the city of Swartz Creek, Genesee County, Michigan. On or about June 29, 2026, he purchased and consumed food products containing Taylor Farms Lettuce from a Taco Bell in Swartz Creek, Genesee County, Michigan. On or about July 4, 2026, Plaintiff Dotson started experiencing stomach cramping, fatigue and explosive diarrhea while in his home. On July 16, 2026, Plaintiff Dotson visited his physician in Flint, Genessee County, Michigan, where he was prescribed Bactrim for his presumed Cyclospora infection. Plaintiff Dotson has suffered and continues to suffer economic and non-economic damages due to Defendants' conduct.

11. Plaintiff Kyle Dyson is a citizen and resident of Macomb, Macomb County, Michigan. On or about July 2, 2026, he purchased and consumed food products containing Taylor Farms Lettuce from a Taco Bell in Macomb, Macomb County, Michigan. On or about July 7, 2026, Plaintiff Dyson started experiencing vomiting and diarrhea while on vacation with his family in Edmonton, Canada. On July 18, 2026, Plaintiff Dyson visited an urgent care center in Macomb, Macomb County, Michigan, where he was prescribed Bactrim for the Cyclospora infection. Plaintiff Dyson has suffered and continues to suffer economic and non-economic damages due to Defendants' conduct.

12. Plaintiff Connie Horton is a citizen and resident of Detroit, Wayne County, Michigan. On June 24 and June 26, 2026, she purchased and consumed

6

food products containing Taylor Farms lettuce from a Taco Bell in Clawson, Oakland County, Michigan. On June 25, 2026, she purchased and consumed food products containing Taylor Farms lettuce from a Taco Bell in Troy, Oakland County, Michigan. And on July 2, 2026, she purchased and consumed food products containing Taylor Farms lettuce from a separate Taco Bell also located in Clawson, Oakland County, Michigan. On July 9, 2026, she began vomiting and suffering severe diarrhea, requiring an urgent care visit on June 12, 2026, in Southfield, Oakland County, Michigan. The medical professional gave her Zofran for her symptoms. When the symptoms continued, she required admission to Sinai Grace Hospital in Detroit, Wayne County, Michigan. The medical professionals at Sinai Grace tested Plaintiff Horton for cyclospora, which came back positive for the parasitic infection. Plaintiff Horton was prescribed Bactrim to treat the infection. In total, Plaintiff Horton experienced more than 11 days of vomiting and diarrhea and had to work through her symptoms to avoid lost wages. Plaintiff Horton has suffered and continues to suffer economic and non-economic damages due to Defendants' conduct.

13.    Plaintiff Ryan McRae is a citizen and resident of Brighton, Livingston County, Michigan. On or about June 19 and June 23, 2026, he purchased and consumed food products containing Taylor Farms lettuce from a Taco Bell in Brighton, Livingston County, Michigan. On July 9, 2026, he began suffering severe

diarrhea, stomach cramping, headaches, vomiting and loss of appetite. On July 10, 2026, Mr. McRae was admitted to the Trinity Health Livingston Hospital in Brighton, Livingston County, Michigan. He tested positive for the cyclospora parasite and was treated with Sulfamethoxaz. Plaintiff McRae has suffered and continues to suffer economic and non-economic damages due to Defendants' conduct.

14.     Plaintiff Maurice Eadie is a citizen and resident of Farmington Hills, Oakland County, Michigan. On or about June 17, 2026, he purchased and consumed food products containing Taylor Farms Lettuce from a Taco Bell in Southfield, Oakland County, Michigan. On or about June 23, 2026, Plaintiff Eadie started experiencing symptoms and remained sick for approximately two weeks. On July 10, 2026, Plaintiff Eadie sought medical treatment for his symptoms. He was diagnosed with Cyclosporiasis on July 16, 2026, and was prescribed Bactrim on July 17, 2026. Plaintiff Eadie has suffered and continues to suffer economic and non-economic damages due to Defendants' conduct.

15.     Plaintiff Christina Seal is a citizen and resident of Flat Rock, Wayne County, Michigan. On or about June 29, 2026, she purchased and consumed food products containing Taylor Farms lettuce from a Taco Bell in Flat Rock, Wayne County, Michigan. On July 6, 2026, she began suffering severe diarrhea, stomach cramping, nausea, loss of appetite and fatigue, requiring an urgent care visit in Flat

Rock, Wayne County, Michigan. The medical professional gave her Sulfamethoxazole for her symptoms. Plaintiff Seal has suffered and continues to suffer economic and non-economic damages due to Defendants' conduct.

**B.     Defendants**

16.     Defendant Taylor Fresh Foods, Inc. ("Taylor Farms") is nationwide producer, manufacturer, and distributor of vegetables. It is a corporation organized under the laws of Delaware, with a principal place of business in Salinas, California.

17.     Defendant Taco Bell Corp. ("Taco Bell") is a corporation organized under the laws of California with a principal place of business in Irvine, California.

18.     Defendant Taco Bell of America, LLC ("Taco Bell of America") is a limited liability company organized under the laws of Delaware, with a principal place of business in Irvine, California. Taco Bell of America is the franchisor entity that licenses and franchises Taco Bell restaurants. Upon information and belief, none of the members of Taco Bell of America, LLC are citizens of the State of Michigan.

### III.    JURISDICTION AND VENUE

19.     Jurisdiction is proper pursuant to 28 U.S.C. § 1332 because there exists complete diversity between the Parties and the amount in controversy exceeds $75,000, exclusive of interests and costs.

20.     Venue is proper in this judicial district under 28 U.S.C. § 1391 because a substantial part of the acts and omissions giving rise to the claims asserted occurred in this District. Plaintiffs all reside in this District, purchased the contaminated food products within this District, and suffered damages within this District.

## IV.    FACTUAL ALLEGATIONS

### A.    Defendant Taylor Farms Has a Long History of Negligently Producing and Supplying Contaminated Food Products

21.     Taylor Farms was founded by CEO Bruce Taylor in 1995 in Salinas Valley California.[8] It manages dozens of production facilities in the United States, Canada, Mexico, and Western Europe.[9] It "grows one-quarter of its own produce and partners with family-owned farms to supply the rest . . ."[10]

22.     Taylor Farms employs 25,000 people and generated $6 billion in revenue in 2022.[11]

23.     Taylor Farms supplies lettuce and other produce to some of the country's largest retailers, including Walmart, Costco, Target, and Whole Foods,

---

[8] *What to know about Taylor Farms, the produce giant tied to the cyclospora outbreak*, CBS NEWS, July 20, 2026, https://www.cbsnews.com/news/taylor-farms-cyclospora-outbreak/ (last visited July 22, 2026).
[9] *Id.*
[10] *Id.*
[11] *Id.*

and restaurant chains Taco Bell and McDonald's.[12]

24.     Taylor Farms represents that it is committed to "quality, assured supply, innovation, sustainability, and food safety."[13] Taylor Farms states on its website:

> Food safety isn't just a protocol – it's a promise we make every day. At Taylor Farms, we believe that providing fresh, high quality produced starts long before the harvest. It begins with a tiny sprout nurtured in rich, healthy soil and continues through careful harvesting, meticulous processing, and swift delivery to your local grocery store.
>
> Taylor Farms is a force for good for people and our community. Our mission is to ensure that every leaf, every vegetable, and every product that reaches your table is not only fresh and delicious but also safe for your and your family.[14]

25.     Taylor Farms represents that it "adhere[s] to stringent industry standards and certifications to uphold our promise of safety and quality . . . We partner with reputable third-party agencies and government inspectors to validate our practices and exceed regulatory requirements."[15] Additionally, it represents that its efforts have led to numerous advancements in food safety practices, including

---

[12] *Id.*

[13] *Foodiverse Welcomes Taylor Farms as a New Partner*, FOODIVERSE, July 27, 2023, https://foodiverse.com/en/foodiverse-welcomes-taylor-farms-as-a-new-partner/ (last visited July 22, 2026).

[14] *From Our Farms to Your Table: Taylor Farms' Commitment to Food Safety*, TAYLOR FARMS, https://www.taylorfarms.com/our-commitment/ (last visited July 22, 2026).

[15] *Id.*

"advanced verification," "state-of-the-art equipment," 'wash systems," and "continuous monitoring."[16]

26.    Taylor Farms' "Ten Building Blocks of Food Safety" are "farm selection, irrigation water, soil health, advanced verification, boots on the ground, harvest, post-harvest handling, processing facilities, equipment design, and cold chain management."[17]

27.    However, despite these representations and supposed practices, Taylor Farms has a documented history of producing and supplying contaminated food products:

    a. In 2013, Taylor Farms produced and supplied salad mixes to Olive Garden and Red Lobster restaurants which were contaminated with Cyclospora.[18] That outbreak, from June to August 2013, caused approximately 631 individuals in 25 states to contract Cyclosporiasis.[19]

    b. In 2020, Taylor Farms recalled several products containing onions due to concerns they could be contaminated with Salmonella.[20]

---

[16] *Id.*

[17] *Id.*

[18] *See What to Know About Taylor Farms*, n.8, *supra*.

[19] *Multistate Cyclospora Outbreak*, CDC, https://www.cdc.gov/orr/responses/multistate-cyclospora-outbreak.html (last visited July 22, 2026).

[20] *See What to Know About Taylor Farms*, n.8, *supra*.

c.  In 2024, Taylor Farms supplied slivered onions for McDonald's Quarter Pounders that were contaminated with E. coli.[21] That outbreak led to one death, thirty-four hospitalizations, and more than a hundred illnesses, according to the FDA.[22] The FDA found dozens of violations at a Colorado Taylor Farms facility that supplied the onions, including dirty equipment.[23] The FDA found that Taylor Farms quality control officials had "signed off on cleaning at the facility as passing, even when agency inspectors said they could still see 'several food contact surfaces that were not visually clean and should have been marked as a "Fail."[24] "Workers were also cutting corners on required sanitation steps for themselves."[25]

28.  In March 2025, Taylor Farms made a $1 million contribution to MAGA, Inc., the super PAC supporting President Trump's political operations. This donation came less than a week after the FDA announced it would be delaying implementation of the "Food Traceability Rule" – "one of the FDA's biggest safety

---

[21] *Id.*

[22] *Id.*

[23] *Id.*; *see also FDA finds little handwashing, dirty equipment at McDonald's supplier linked to E. coli outbreak*, CBS NEWS, Jan. 10, 2025, https://www.cbsnews.com/news/fda-report-e-coli-outbreak-onions-taylor-farms/ (last visited July 22, 2026).

[24] *Id.*

[25] *Id.*

reforms of the last decade [which] is meant to make it easier (and faster) to trace contaminated food back through the supply chain during an outbreak."[26] "When implemented, it will require companies that handle certain high-risk foods—including leafy greens, fresh-cut vegetables, cucumbers, peppers, tomatoes, melons, herbs and sprouts—to keep standardized digital records showing where products came from and where they went."[27]

**B.     The Taco Bell Defendants Have a Long History of Selling Contaminated Food**

29.     The Taco Bell Defendants represent to consumers that "Food quality and safety are our top priorities at Taco Bell. We've partnered with suppliers, industry experts, regulatory groups, and even our competitors to improve food safety from farm to restaurant."[28]

30.     The Taco Bell website advises the public that "It's not enough to offer affordable, craveable, and innovative menu items. It has to be food you feel good

---

[26] *Here's Where The Cyclosporiasis Outbreak Stands After Taylor Farms' False Positive*, FORBES, July 21, 2026, https://www.forbes.com/sites/maryroeloffs/2026/07/20/heres-where-the-cyclosporiasis-outbreak-stands-after-taylor-farms-false-positive/ (last visited July 22, 2026).

[27] *Id.*

[28] *What are Taco Bell's Food Safety Procedures*, TACO BELL, https://help.tacobell.com/s/faq/what-are-taco-bells-food-safety-procedures (last visited July 22, 2026).

about, made with ingredients you can trust and understand."[29]

31.     Despite these representations, the Taco Bell Defendants have their own history of lettuce-related recalls, including but not limited to the following:

    a. In 2006, at least 71 people contracted E. coli, and 53 were hospitalized, after eating at Taco Bell locations in four states. It was determined that lettuce was likely the source of the bacteria.[30]

    b. Another E. coli outbreak due to contaminated lettuce occurred in late 2012-early 2013 and sickened 30 people in Canada.[31]

32.     Given its own history with contaminated lettuce outbreaks along with its knowledge of Taylor Farms' unsafe practices, the Taco Bell Defendants knew or should have known that obtaining lettuce from Taylor Farms without taking additional precautions to test or clean the lettuce would predictably result in another outbreak.

33.     The Taco Bell Defendants require their Taco Bell-branded franchises to obtain their food ingredients, including the lettuce supplied by Taylor Farms, from specific suppliers.

---

[29] *Dedicated to Better Food*, TACO BELL, https://www.tacobell.com/purpose/food (last visited July 22, 2026).

[30] *The Biggest Recalls in Taco Bell's History*, MASHED, Jan. 24, 2025, https://www.mashed.com/1765733/taco-bell-biggest-recalls/ (last visited July 22, 2026).

[31] *Id.*

34.     The Taco Bell Defendants control the supply chain for their ingredients and decide which testing, if any, is and is not performed on any obtained ingredients that will be sold to consumers.

35.     The Taco Bell Defendants also institute specific procedures for how obtained ingredients are stored, handled, and served at the franchises.

36.     As a result, the Taco Bell-branded franchises who prepared and served food to Plaintiffs acted as the actual and/or apparent agents, servants and/or employees of the Taco Bell Defendants, acting within the course and scope of that agency and authority, and the Taco Bell Defendants are vicariously liable for their acts and omissions.

**C.     The 2026 Cyclospora Outbreak**

37.     Beginning in or around May 2026, individuals began contracting Cyclosporiasis.

38.     By the end of June 2026, dozens of cases were being reported daily in Michigan alone.[32] Given that Michigan only records approximately 40-50 Cyclosporiasis cases per year, this reporting was the sign of a significant outbreak. By mid-July, hundreds of cases were being reported daily.

39.     Michigan, as of the most recent published data, has the highest number of victims of Cyclosporiasis when compared to any State in the Country. It remains

---

[32] *See Infectious Disease Outbreaks*, n.3, *supra*.

16

the epicenter of the infectious outbreak.

40.     Outside of Michigan, thousands of consumers nationwide have acquired Cyclosporiasis, and dozens of those have been hospitalized.

41.     The CDC and FDA have traced the infection back to lettuce produced and supplied by Taylor Farms and sold by retailers and restaurants, including Taco Bell.

42.     Taylor Farms has recalled the lettuce, and it is no longer on the menu at Taco Bell locations.

43.     However, this recall does not alleviate the harm suffered by Plaintiffs who purchased and consumed contaminated lettuce from Taco Bell, became severely ill, and suffered damages as previously alleged. This harm was a direct and proximate result of Defendants' conduct in the production, supply, and sale of the contaminated lettuce to Plaintiffs.

## V.     CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
**(As to All Defendants)**

44.     Plaintiffs re-allege and re-incorporate by reference all paragraphs as though fully set forth herein.

45.     Defendants had a duty to manufacture, produce, store, supply, and sell safe food products that Plaintiffs would ultimately consume. Defendants had a duty

17

to comply with all statutory and regulatory provisions that pertained or applied to the manufacture, distribution, storage, labeling, and sale of the food product that injured Plaintiffs including the applicable provisions of the Federal Food Drug and Cosmetic Act, and similar Michigan food and public health statutes, including without limitation the provisions of MCL 289.5101 which prohibits the manufacture and sale of any food that is adulterated or produced in unsanitary conditions.

46.     The lettuce that Defendants manufactured and sold, and that Plaintiffs purchased and consumed, was adulterated within the meaning of the federal Food, Drug and Cosmetic Act, and similar Michigan statutes, because it contained a deleterious substance that rendered it injurious to health, i.e., the Cyclospora parasite.

47.     Defendants violated federal, state, and local food safety regulations by their manufacture and sale of adulterated food. These regulations establish a positive and definite standard of care in the manufacture and sale of food. The violation of these regulations constitutes evidence of negligence.

48.     Plaintiffs are in the class of persons intended to be protected by these statutes and regulations and were injured as the direct and proximate result of the Defendants' violation of applicable federal, state, and local food safety regulations.

49.     Defendants were negligent in the manufacture, distribution, and sale of a food product that was adulterated and contaminated with Cyclospora, not fit for human consumption, and not reasonably safe because adequate warnings or instructions were not provided and could not have prevented the injuries that occurred.

50.     Once Defendants learned, or in the exercise of reasonable care should have learned, of the dangers associated with preparing and selling food, including, but not limited to, cross-contamination between foods, and the dangers associated with improperly cleaned or washed food, they had a duty to warn Plaintiffs but failed to do so.

51.     Defendants had a duty to use supplies and raw materials in producing their food products that were in compliance with applicable federal, state, and local laws, ordinances and regulations; that were from reliable sources; and that were clean, wholesome, free from adulteration and contamination, and fit for human consumption, but failed to do so, and therefore breached that duty.

52.     Defendants were negligent in the selection of their affiliated corporations, suppliers, or other agents or subcontractors, and failed to adequately supervise them, or provide them with adequate standards, and, as a result, produced and sold food that was adulterated with Cyclospora.

19

53.     Defendants had a duty to properly supervise, train, and monitor their employees, or the employees of their affiliates, agents or subcontractors, engaged in the preparation and sale of their food products, to ensure compliance with Defendants' operating standards and to ensure compliance with all applicable health regulations. Defendants failed to properly supervise, train, and monitor these employees engaged in the manufacture, preparation and delivery of the food product ultimately sold to Plaintiffs that made them sick and thus breached that duty.

54.     The Taco Bell Defendants had a duty, given its knowledge of prior outbreaks of Cyclospora and other pathogens on leafy greens lettuce and other produce, to take reasonable measures to ensure that the produce utilized by its restaurants nationally were safely grown; were not grown in proximity to sewers or other sources of fecal-water contamination; were not grown in proximity to recognized vectors for the transmission of Cyclospora; and were not grown under conditions, generally, that are known, or reasonably should be known, to the food industry to be unsafe.

55.     It was reasonably foreseeable to Defendants, based on their history of contaminated food recalls, especially those concerning lettuce, that certain safety practices had to be followed in order to ensure that Cyclospora would not appear on food products to be consumed and sicken individuals.

20

56. As a direct and proximate result of Defendants' negligence, Plaintiffs suffered the injuries and damages set forth herein.

## COUNT II
## STRICT PRODUCT LIABILITY
### (As to All Defendants)

57. Plaintiffs re-allege and re-incorporate by reference all factual allegations as though fully set forth herein.

58. At all relevant times, Defendants were manufacturers and sellers of the contaminated and adulterated food product that is the subject of this case.

59. The contaminated food product that the Defendants manufactured, distributed, and/or sold was, at the time it left the Defendants' control, defective and unreasonably dangerous for its ordinary and expected use because it contained Cyclospora, a potentially deadly pathogen.

60. The contaminated food product that the Defendants manufactured, distributed, and/or sold was delivered to Plaintiffs without any change in its defective condition. The contaminated food product that the Defendants manufactured, distributed, and/or sold was used in the manner expected and intended, and was consumed by Plaintiffs.

61. The Defendants owed a duty of care to Plaintiffs to design, manufacture, and/or sell food that was not contaminated, that was fit for human consumption, that was reasonably safe in construction, and that was free of

21

pathogens or other substances injurious to human health. Defendants breached this duty.

62.     Defendants owed a duty of care to Plaintiffs to design, prepare, serve, and sell food that was fit for human consumption, and that was safe to the extent contemplated by a reasonable consumer. Defendants breached this duty.

63.     The risks of the contaminated food products and Cyclospora contamination did not outweigh the benefits since Defendants could have utilized safer alternative practices at the time the products were manufactured, produced, and sold to prevent Plaintiffs from contracting Cyclosporiasis.

64.     Plaintiffs suffered injury and damages as a direct and proximate result of the defective and unreasonably dangerous condition of the contaminated food product that the Defendants manufactured, distributed, and/or sold.

65.     Each Defendant expressly or impliedly warranted to each Plaintiff, and to the general public, that their food products would be safe to consume.

66.     Defendants are liable for these breaches and violations, causing the injuries and damages set forth herein.

## COUNT III
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (As to All Defendants)

67.     Plaintiffs re-allege and re-incorporate by reference all factual allegations as though fully set forth herein.

68.     Defendants produced, distributed, and sold the contaminated food products that injured Plaintiffs and caused their respective Cyclosporiasis infections. Defendants are, therefore, a manufacturer, distributor, and/or seller of an adulterated food product, and the adulterated food product reached Plaintiffs without substantial change from the condition in which it was sold by Defendants.

69.     The food product sold by Defendants and ultimately consumed by Plaintiffs, which was contaminated with Cyclospora, would not pass without exception in the trade and was thus in breach of the implied warranty of merchantability.

70.     Privity exists between Plaintiffs and Defendants because Defendants impliedly warranted to Plaintiffs through the warranting, packaging, advertising, marketing, and labeling that the food products were high quality, healthy, safe, and suitable for human consumption, and by failing to make any mention of Cyclospora contamination.

71.     Nonetheless, privity is not required here because Plaintiffs are intended third-party beneficiaries of contracts between Defendants and its distributors and buyers, and of their implied warranties. The distributors and buyers were not intended to be the ultimate consumers of the food products and have no rights under the warranties of the food products; the warranties were designed for and intended to benefit consumers only.

72.    As direct and proximate result of the conduct of Defendants and their agents, servants, and/or employees as set forth above, Plaintiffs suffered a Cyclosporiasis infection and the adverse effects associated with this infection, as described in previous paragraphs of this complaint.

73.    As a further direct and proximate result of the conduct of Defendants and their agents, servants, and/or employees, Plaintiffs were forced to endure great pain, suffering, and inconvenience and may endure the same in the future. Plaintiffs were forced to submit to medical care and may be forced to submit to the same in the future.

74.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs suffered the injuries and damages set forth herein.

### COUNT IV
### BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE
### (As to All Defendants)

75.    Plaintiffs re-allege and re-incorporate by reference all paragraphs as though fully set forth herein.

76.    Defendants produced, distributed, and sold the contaminated food products that injured Plaintiffs and caused their respective Cyclospora infections. Defendants are, therefore, a manufacturer, distributor, and/or seller of an

adulterated food product, and the adulterated food product reached Plaintiffs without substantial change from the condition in which it was sold by Defendants.

77. The contaminated food sold by Defendants and consumed by Plaintiffs was not fit for the uses and purposes intended by either Plaintiffs or Defendants, i.e., human consumption, and that this product was therefore in breach of the implied warranty of fitness for its intended use.

78. Privity exists between Plaintiffs and Defendants because Defendants impliedly warranted to Plaintiffs through the warranting, packaging, advertising, marketing, and labeling that the food products were high quality, healthy, safe, and suitable for human consumption, and by failing to make any mention of Cyclospora contamination.

79. Nonetheless, privity is not required here because Plaintiffs are intended third-party beneficiaries of contracts between Defendants and its distributors and buyers, and of their implied warranties. The distributors and buyers were not intended to be the ultimate consumers of the food products and have no rights under the warranties of the food products; the warranties were designed for and intended to benefit consumers only.

80. As a direct and proximate result of the conduct of Defendants and their agents, servants, and/or employees as set forth above, Plaintiffs suffered a

Cyclosporiasis infection and the adverse effects associated with this infection, as described in previous paragraphs of this complaint.

81.     As a further direct and proximate result of the conduct of Defendants and their agents, servants, and/or employees, Plaintiffs were forced to endure great pain, suffering, and inconvenience and may endure the same in the future. Plaintiffs were forced to submit to medical care and may be forced to submit to the same in the future.

82.     As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs suffered the injuries and damages set forth herein.

## COUNT V
## VIOLATION OF THE MICHIGAN CONSUMER PROTECTION ACT
### (MCL 44.901, *et seq*.)
### (As to All Defendants)

83.     Plaintiffs re-allege and re-incorporate by reference all factual allegations as though fully set forth herein.

84.     Plaintiffs and Defendants are "persons" as defined in MCL 445.902(d).

85.     The conduct alleged herein occurred during "trade or commerce" as defined in MCL 445.902(g).

86.     Defendants' conduct violates multiple provisions of the Michigan Consumer Protection Act ("MCPA"), including:

26

(1) causing a probability of confusion, or misunderstanding as to the source, approval or certification of goods, (MCL 445.903(1)(a));

(2) representing that goods have sponsorship, approval, characteristics, ingredients, uses, benefits or qualities that they do not have, (MCL 445.903(1)(c));

(3) representing that goods are of a particular standard, quality, or grade (MCL 445.903(1)(e)); and

(4) failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer (MCL 445.903(1)(s)).

87. Specifically, Defendants concealed and/or failed to disclose the true nature of the contaminated food products, as described herein and otherwise engaged in activities with a tendency or capacity to deceive. Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of a material fact with intent that others, including Plaintiffs, rely upon such concealment, suppression, or omission, in connection with the sale of contaminated food products.

88. Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and

27

nature of the contaminated food products.

89. Defendants knew or should have known that its conduct violated the MCPA.

90. As alleged above, Defendants made material statements about the safety of their food production, supply, and management that were either false or misleading.

91. Defendants owed Plaintiffs a duty to disclose the true nature of the food products prior to sale.

92. As a direct and proximate result of Defendants' violations of the MCPA, Plaintiffs suffered the injuries and damages set forth herein.

93. Further, as a direct and proximate result of the Defendants' violations of the MCPA, Plaintiffs incurred attorney fees, for which Defendants are liable.

## COUNT VI
## GROSS NEGLIGENCE

94. Plaintiffs reallege and incorporate by reference all factual allegations as though fully set forth herein.

95. Defendants' conduct, as set forth above, constitutes gross negligence, i.e., conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results.

96. As a direct and proximate result of the grossly negligent conduct of the Defendants, Plaintiffs suffered the injuries and damages set forth herein.

28

97.     Further, as a direct and proximate result of the grossly negligent conduct of the Defendants, Plaintiffs suffered exemplary damages under Michigan law, i.e., damages that result from the reckless nature and substantial lack of concern for their safety exhibited by Defendants, separate and apart from the emotional distress resulting from their physical injuries.

## VI.    REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants, as follows:

A.     The full amount of damages suffered by Plaintiffs, including Plaintiffs' economic damages, Plaintiffs' non-economic damages, incidental damages, consequential damages, exemplary damages, and punitive damages, as allowed by law. These damages include, but are not limited to: damages for general pain and suffering; damages for loss of enjoyment of life, both past and future; medial and medical related expenses, both past and future; travel and travel-related expenses, past and future; emotional distress, past and future; pharmaceutical expenses, past and future; lost wages, past and future; and all other damages that would or could be reasonably anticipated to arise under the circumstances;

B.     Plaintiffs' attorneys' fees and costs to the extent allowable;

C.     Prejudgment interest on Plaintiffs' damages; and

D.     Such other and further relief the Court deems just and proper.

## VII.    DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial for all claims so triable.

29

DATED: July 23, 2026    Respectfully submitted,

*/s/ E. Powell Miller*
E. Powell Miller (P39487)
Marc L. Newman (P51393)
Dennis A. Lienhardt (P81118)
Aya Chouaib (P88113)
**THE MILLER LAW FIRM, P.C.**
950 W. University Drive, Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
epm@millerlawpc.com
mln@millerlawpc.com
dal@millerlawpc.com
ac@millerlawpc.com

*/s/ Marc E. Lipton*
Marc E. Lipton (P43877)
Steffani Chocron (P45335)
Kyle Kelly (P69863)
**LIPTON LAW**
18930 W. 10 Mile Rd.
Southfield, MI 48075
(248) 557-1688/(248) 557-6344 (Fax)
marc@liptonlaw.com
steffani@liptonlaw.com
kyle@liptonlaw.com

*Counsel for Plaintiffs*

30